FIEDLER CORPORATION, A CORPORATION, RESPONDENT,
v. MANUFACTURER'S DEVELOPMENT COMPANY, A
CORPORATION, APPELLANT.

Submitted May 29, 1931—Decided February 1, 1932.

For the appellant, *Stein, McGlynn & Hannoch* (*Edward R. McGlynn,* of counsel).

For the respondent, *Pitney, Hardin & Skinner* (*Carl A. Feick,* of counsel).

The opinion of the court was delivered by

DALY, J. This is an appeal from a judgment of the Supreme Court entered upon a verdict of a jury after a trial at the Essex Circuit.

The plaintiff was engaged in the real estate business. The defendant owned a large tract of land in Newark which was largely undeveloped. The tract was being developed for industrial sites and the defendant sought tenants for these sites upon which the defendant would erect buildings for manufacturing purposes according to the requirements of the tenant.

There was testimony that the defendant had verbally authorized plaintiff to secure tenants for it upon this tract, agreeing to pay as commission therefor five per centum of the rentals under leases entered into or subsequent renewals or extensions thereof. It was undisputed that plaintiff procured some tenants for defendant upon this tract and was paid its commissions, prior to the transaction which resulted in this suit.

There was also testimony that plaintiff had a client, Brandes

Products Corporation, with whom it had previously done business, and that it sought to interest this corporation in defendant's proposition. Craig E. Vail testified that he was a salesman for the plaintiff and had interested Brandes Products Corporation in the site with the result that on May 24th, 1926, a lease was executed between it and defendant; that this lease was superseded by a lease between the same parties dated June 16th, 1926. Commissions were paid by defendant on the gross rentals under this lease. There was testimony that, on the same day upon which the aforesaid lease was executed, the defendant executed a commission agreement concerning the tenancy of Brandes Products Corporation and another tenant, in part as follows:

"Now, therefore, in consideration of the services rendered by the Fiedler Corporation should the within mentioned tenants, their successors, or assigns renew their lease, or extend their occupancy beyond the original term, or lease additional space in the premises in question or any other premises we may own, or should they purchase the premises referred to or any other property which we may own; we agree to pay the Fiedler Corporation a commission of five (5) per cent. on the gross rentals involved in such renewals, additions, or extensions of the lease."

The agreement is not dated. Defendant admitted the execution of it but alleged it did not understand the meaning of the agreement when it signed. No attempt was made to prove fraud.

It was testified that Brandes Products Corporation was expecting to require larger quarters and plaintiff's employes continued their endeavors to lease to it more of defendant's land from the execution of the lease until February, 1927, when the president of defendant company told plaintiff that it did not intend to build any more buildings. Plaintiff then ceased its efforts. Defendant, subsequently, dealt directly with Brandes Products Corporation and on May 24th, 1927, leased it the same land which plaintiff had sought to interest it in. The buildings built thereon for it by defendant were similar to or of the same plan as those contemplated in the

plaintiff's attempts to lease. There was also some testimony of the payment of $2,000 by the defendant to an employe of the Brandes Products Corporation, in charge of leasings and that defendant had sought to embody in this lease a provision that Brandes Products Corporation would pay any commission due the plaintiff. The suit was brought to recover the commissions alleged to be due plaintiff upon the lease of May 24th, 1927. The complaint contained alternate counts which set forth the cause of action for this commission, one basing its right to recovery upon the commission agreement before referred to, and the other basing its right to recovery upon a *quantum meruit*. The defendant's grounds of appeal are directed to the court's refusal to nonsuit; its refusal to direct a verdict; to the admission of certain testimony and to certain portions of the court's charge.

The motion to nonsuit was on the grounds that the commission agreement was void because of lack of consideration; because it was based on a past consideration; because there was a lack of mutuality; and because the plaintiff had elected to stand upon a written agreement and, that, failing on that proof, the plaintiff could not seek recovery upon a *quantum meruit*. The court properly denied the motion. There was some evidence that the written agreement was intended to embody and evidence a previous verbal agreement between the parties and, furthermore, there was a valid consideration, for the promises on the part of the defendant contained therein, in that plaintiff was to render services in future negotiations. The court will not inquire into the adequacy of the consideration. There was no lack of mutuality. Plaintiff performed its part of the contract and the promise of defendant then became binding. The plaintiff was entitled to base its right of recovery on the alternative theories asserted. Recovery was not sought on both but on one or the other. This is proper under the Practice act (rule 37). There was testimony to prove the commission agreement and also testimony to support the count on the *quantum meruit*, in that plaintiff had sought to procure a lease with Brandes Products Corporation upon the same land covered

by the lease of May 24th, 1927, but that defendant had blocked its efforts; together with evidence of the usual commission upon such a lease.

Defendant's motion for a directed verdict was based upon the same grounds as its motion to nonsuit and was properly denied for the reasons hereinbefore stated.

Defendant excepted to the admission of testimony by the witness Hartman as to the custom of the real estate business in similar cases. Hartman was an expert and from the nature of the claims made in this case and the facts produced we find the evidence was admissible under the claim on a *quantum meruit*. The other exception to the admission of testimony relates to permitting defendant's bookkeeper to testify as to the payment of $2,000 by defendant to an employe of Brandes Products Corporation who had charge of closing the leases. This was admissible inasmuch as plaintiff had introduced evidence that it was instrumental in securing the lease and that defendant had attempted to block its efforts and to avoid the payment of commissions. In this situation, all the circumstances leading to and attending the execution of the lease were relevant and material.

Defendant excepted to the court's charge of number two of plaintiff's request to charge. "A broker is entitled to commissions, when he has procured a tenant able and willing to enter into a lease on terms on which the broker was authorized to act." This is sound law. The court then added, to which defendant excepted, "of course, this is not very important, because, in this case there was a lease. It was not a question of being able to do it. It did do it. It entered into the lease, I mean to say, on the lease of May 24th, 1927, the only lease in question." There was no error in this. There was a lease executed by a tenant claimed to have been procured by plaintiff and the court in other portions of its charge left to the jury the question whether plaintiff procured the tenant.

Defendant also excepted to the court's charge of plaintiff's requests, numbers six and eight, which were, in effect, that plaintiff would be entitled to recover under its agreement

unless it was procured by fraud. Defendant argues it was error so to charge because the agreement itself was not valid and should have been excluded from the case. We have previously covered this contention in what we said as to the trial court's ruling on the motions for a nonsuit and directed verdict.

The court charged plaintiff's request number three: "A broker is entitled to commissions if he is requested to bring a tenant who will lease on terms to be agreed upon between the owner and tenant and thereafter brings to the owner a tenant who enters into such a lease as a result of the negotiations instituted by him." While defendant excepted to the charging of this request in the court below, it now admits this to be a correct statement of the law, but contends that the court's remarks in explanation and amplification of this request were prejudicial to defendant and constituted harmful error. We find no error in the remarks.

The court charged defendant's fourth request: "There can be no implied contract where there is an express contract between the parties in reference to the same subject-matter." The court, undoubtedly, felt that this charge standing alone might confuse the jury, since plaintiff's case was predicated not only upon an alleged express contract but also in the alternative upon an alleged implied contract, and, therefore, amplified the charge by saying that "the plaintiff contends that there is both but it says, 'if you say there was no written contract, we then say we are entitled under an implied contract, and we say there was an implied contract,'" then properly continued further to amplify defendant's request. There was no error in this portion of the charge.

The judgment will be affirmed.

*For affirmance*—The Chief Justice, Trenchard, Parker, Campbell, Lloyd, Case, Bodine, Daly, Donges, Van Buskirk, Kays, Hetfield, Dear, Wells, JJ. 14.

*For reversal*—None.